**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER S. GILLISPIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:20-cv-1598-MTS |
| | ) | |
| TERRY LAWSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Defendants Teri Vandergriff,[1] Daniel Francis, John Hagerty, Ryan Hillis, Amanda Crocker, Alex Downing, Tiffany Owens, Ryan Hanna, and Darren Klemp (collectively, the "FCC Defendants") filed a Motion To Strike Portions of Plaintiff's Affidavit. Doc. [72]. For the reasons that follow, the Court denies in part and grants in part the Motion.

To briefly summarize the facts of this case, Plaintiff Christopher Gillispie is incarcerated in the custody of the Missouri Department of Corrections at Farmington Correctional Center ("FCC"). Plaintiff brings claims against the FCC Defendants for failing to protect him from an attack on July 20, 2020 ("July 20") by his cellmate, co-defendant Rodney Allen ("Allen"). Plaintiff claims the FCC Defendants were aware of the danger Allen posed to Plaintiff because of an incident that occurred two weeks earlier on July 6, 2020 ("July 6"). The July 6 incident ended with Allen being taken to a single-man cell and put on suicide watch and Plaintiff receiving medical treatment. On July 17, 2020, Allen was placed back into Plaintiff's cell. On July 20, Allen attacked, beat, and raped Plaintiff in their shared cell.

---

[1] The Court notes that Plaintiff incorrectly named Defendant Teri as "Terry." Also, since this lawsuit was filed, Defendant Teri Lawson's name has changed to Teri Vandergriff.

Defendants previously deposed Plaintiff on October 19, 2020.  Doc. [72-1].  On April 14, 2022, the FCC Defendants moved for summary judgment.  Docs. [61–63].  In opposing summary judgment, Plaintiff submitted an affidavit in May 2022.  Doc. [72-2].  In the current Motion, the FCC Defendants argue that several portions of Plaintiff's affidavit are a so-called "sham affidavit," whereby Plaintiff's newly submitted affidavit contradicts his previous deposition testimony in an attempt to "create an issue of fact where none existed before."  *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021) .

"It is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment."  *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020).  An affidavit is a "sham affidavit" and should be "disregarded" "if it contradicts prior testimony or is a 'sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before.'"  *Garang*, 2 F.4th at 1122 (quoting *Button*, 963 F.3d at 830).  "However, if the affidavit merely explains portions of a prior deposition that may have been unclear, it is not a sham affidavit."  *Button*, 963 F.3d at 830.  "In addition, when the affiant's affidavit does not actually contradict his earlier testimony, the district court should not strike the affidavit from the record."  *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006).

1.  ***Whether Allen Threatened Plaintiff During The July 6th Incident***.

Plaintiff testified about the July 6 incident in his deposition as follows.  During the deposition, Defendants said to Plaintiff "Let's talk about the morning of July 6, 2020. Do you remember that incident?" to which Plaintiff answered "yes." Doc. [72-1] at 64 (64:21–25).  "Can you tell us what happened that morning? -- And this is one of those narrative answers. You just explain as much as you want. So can you tell us what happened?"  *Id.* at 64–65 (64:24–65:6).

2

Plaintiff proceeded to give a narration of how the morning began and that Allen became agitated after Defendant Hana told Allen she did not think he had a court date that day.  *Id.* at 65–66 (65:7–66:15).  Defendants then asked, "So what happened after that?"  *Id.* at 66 (66:16).  Plaintiff continued his narration and explained that Allen became upset after learning that he would not be transported out of the prison for a court date, began acting erratically (e.g., banging his head on the walls, shouting obscenities, cutting himself with a razor blade), Plaintiff pleaded for FCC staff (several FCC Defendants)[2] to remove Plaintiff from the cell because he was scared of Allen, the chief of the prison's mental-health services attempted to calm Allen down, but that escalated it. *Id.* at 66–68 (66:17–68:22).  Allen refused to allow Plaintiff to leave the cell, Allen refused to allow the FCC staff to control him with handcuffs.  *Id.*  FCC staff began pepper spraying the cell, Plaintiff continued screaming for help, and eventually Allen and Plaintiff were pulled out.[3]  *Id.*  Plaintiff explained that after he was pulled out of the cell, he said, "'I don't want [Allen] back in my cell.' I declared him as an enemy at that moment right there. I said, 'Listen, I'm in fear of my life. I don't want him back in my cell.'"  *Id.* at 75–76 (75:19–76:4); *see also id.* at 76 (76:23–25).

Defendants argue that Plaintiff "submitted an affidavit that completely changes his story" of the July 6 incident.  Doc. [73] at 6.  But, the Court finds that Plaintiff's affidavit "merely expands" on the details of July 6 and "does not contradict h[is] deposition testimony."  *Button*, 963 F.3d at 831; *see also Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (explaining that an affidavit that expands on information not specifically asked about in a deposition is not a sham affidavit).  Plaintiff in fact *never* said that Allen did not threaten him, and never said that he did not fear for his life because of Allen's threats and other behavior.  He said the contrary and

---

[2] Defendants Hana, Crocker, Hillis, Hagerty, Lambing, and Klemp.  Doc. [72-1] at 68–69 (68:23–69:19).
[3] Elsewhere in the Deposition, Plaintiff explained Allen's behavior such that in the cell Allen could have "cut [him], could have hurt [him], could have done anything [to him]."  Doc. [72-1] at 97 (97:10–20).

opposite, instead.  Notably, during the deposition, no questions were asked about Allen's threats to Plaintiff, and Plaintiff had "no obligation in h[is] deposition to volunteer information that was not requested."  *Baker v. Silver Oak Senior Living Mgmt. Co., L.C.*, 581 F.3d 684, 691 (8th Cir. 2009).  Rather, Defendants asked Plaintiff two extremely open-ended questions regarding July 6 and requested a response in narrative form, and Defendants follow-up questions to Plaintiff were even more general and also confusing.  *See* Doc. [72-1] at 70 (70:1–12);[4] *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983) (explaining evidence of confusion or mistake when being deposed may allow for a later, seemingly contradictory affidavit to create a genuine issue of fact).

Importantly, prior to the deposition, Plaintiff provided a more detailed account of July 6 in an Informal Resolution Request ("IRR"), which he submitted to the prison complaining of how FCC officials handled the July 6 incident.  Plaintiff's IRR *is* consistent with what he wrote in his affidavit.  *Button*, 963 F.3d at 831 (finding no sham affidavit because the later "more detailed" affidavit did not contradict the prior deposition and the later testimony "simply mirrored" other testimony and record evidence); *see, e.g.*, Doc. [63-13] ("I was being held hostage, an[d] against my will"; "Allen made several homicidal threats"; "I was in fear for me life"; "I cried for help and rescue"; "blinding me from my kidnapper"; "holding me against my will and wielding dangerous weapons").  Thus, even if Plaintiff's affidavit could be construed as contradictory to his deposition—which the Court finds it is not—the Court is not obligated to disregard the affidavit because "excluding the affidavit 'is limited to situations where the conflicts between the deposition

---

[4] Doc. [72-1] at 70 (70:1–12) (Defendants asked "Is there anything else that happened?" and Plaintiff said, "What do you mean?" Defendants said, "Well, I asked you to tell me what happened and you told the story and you ended up with them pulling you out of there. Is there anything else you'd like to add about what happened that morning?" and Plaintiff responded, "You just told me -- I don't know. I don't understand your question." Defendants again stated, "Is there anything else you want to add or have you told me everything happened that morning?" and Plaintiff stated "I don't know what to do add.").

4

and affidavit raise only sham issues.'" *Button*, 963 F.3d at 831 (quoting *Baker*, 581 F.3d at 690));

*Bass*, 232 F.3d at 618 (explaining a sham issue is one that creates issues of fact to defeat summary

judgment). For these reasons, the Court will not "disregard" ¶¶ 5, 7, 9, 11, 12, 15, 16, 17, and 33

of Plaintiff's affidavit on this basis. *Garang*, 2 F.4th at 1122 (explaining a "sham affidavit" should

be "disregarded"); *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 4:13-cv-01257-ERW, 2014 WL

466228, at *4 (E.D. Mo. Feb. 5, 2014) (explaining motions to strike do not apply to affidavits in

support of summary judgment).

2. ***Whether Plaintiff Told Defendant Hillis About Allen's Threats During Their July 16th Conversation***.

On July 16, 2020, Plaintiff had a verbal conversation with Defendant Hillis about the IRR

he had submitted regarding the July 6 incident. He testified about that conversation in his

deposition as follows. Plaintiff explained that Defendant Hillis had come to Plaintiff's door with

the IRR in Defendant Hillis's hand and that they discussed what Plaintiff wrote in the IRR. Doc.

[73-1] at 96–97 (96:20–97:20). Plaintiff also stated that he felt like he "was a victim" and that the

officers had "endangered [Plaintiff's] life" by trapping (e.g., spraying with pepper spray and

restrained) Plaintiff in the cell with Allen because Allen could have "cut [him], could have hurt

[him], could have done anything [to him]." *Id.* at 97 (97:10–20). Plaintiff explained he "called

for help" and "cried for help." *Id.* After Plaintiff was removed from the cell, Plaintiff told

Defendant Hillis "'Listen, I'm in fear of my life. I don't want [Allen] back in my cell.'" *Id.* at 75–

76 (75:19–76:4).

In Plaintiff's affidavit, Plaintiff said he told Defendant Hillis about everything he wrote in

his IRR, including that Defendant Allen had held Plaintiff against his will, that Plaintiff feared for

his life, that Plaintiff screamed and cried out for help, and that he wanted away from Allen and to

never again be celled with him. Doc. [73-2] ¶¶ 27, 32–33.

5

Defendants argue that "Plaintiff is adding new facts to his account in a bid to avoid summary judgment." Doc. [73] at 8. The Court disagrees. Plaintiff's affidavit "merely expands on the discussion" he had with Defendant Hillis regarding the IRR and "does not contradict h[is] deposition testimony." *Button*, 963 F.3d at 831; *Bass*, 232 F.3d at 618. Certainly, the testimonies are not inconsistent, and the affidavit's facts cannot be said to constitute a sudden and unexplained revision of Plaintiff's prior deposition testimony. As such, Plaintiff is "entitled to present evidence by way of affidavit concerning the details of h[is] alleged statements" to Defendant Hillis regarding the July 6 incident. *Baker*, 581 F.3d at 690. Moreover, the entire purpose of the July 16, 2020, conversation between Defendant Hillis and Plaintiff was to discuss the IRR, and Plaintiff's IRR is consistent with what he wrote in his affidavit. For these reasons, the Court will not "disregard" ¶¶ 27, 32, and 33 of Plaintiff's affidavit as it applies to Defendant Hillis.

3. ***Whether Plaintiff Told Defendant Downing About Allen's Previous Threats On July 17th.***

By July 17, 2020, Allen was taken off suicide watch and could be moved back into a two-man cell with a cellmate. Defendant Downing—who had not been present during the July 6 incident—placed Allen back into the cell he previously had shared with Plaintiff. Before doing so, Defendant Downing spoke to Plaintiff about the move.

In his deposition, Plaintiff generally told Defendant Downing that he did not "want no cellie" (i.e., cell mate) and that Defendant Downing never told Plaintiff which prisoner would be placed into Plaintiff's cell. Doc. [73-1] at 102–103 (102:6–103:9). When directly asked: "When they brought Allen in, did you explain that you were in fear for your life and you didn't want him in the cell?" Plaintiff answered "no." *Id.* at 103 (103:10–13). When asked: "Did you say to Sergeant Downing, 'No, [Allen] threatened me. I'm in fear for my life'?" Plaintiff answered "no." *Id.* at 103 (103:3–9).

6

In his affidavit, Plaintiff now states that Plaintiff told Defendant Downing what he had told Defendant Hillis—that "Defendant Allen had held me against my will, that I feared for my life, that I cried out to be rescued, and that I wanted and needed to be far away from Allen and never again celled with him." Doc. [73-2] ¶ 32. Plaintiff also states that despite "directly telling" Defendant Downing that "I feared for my life and never wanted to share a cell with Allen again, Downing caused Allen to be put in my cell anyway even though there were several other available single-man cells to put him in." *Id.* ¶ 33.

Plaintiff's affidavit stands in stark contrast to his previous deposition testimony. During his deposition, Plaintiff admitted that he never spoke with Defendant Downing about Allen, threats Allen made, or that he feared Allen. In fact, Plaintiff testified that he and Defendant Downing did not discuss Allen at all.[5] In his affidavit, Plaintiff now claims not only that he and Defendant Downing discussed Allen specifically, but that Plaintiff explicitly told Defendant Downing that he feared Allen and about Allen's previous threats.

Plaintiff claims he is allowed to change his previous testimony in order to rebut Defendant Downing's testimony about their July 17, 2020, conversation. Doc. [74] at 10. According to Defendant Downing, he and Plaintiff *did* discuss Allen and Plaintiff allegedly told Downing that he *wanted* Allen back in his cell. *Id.* (citing Doc. [69-6] at 12 (12:16–25)). In opposing summary judgment, Plaintiff is free to cite to his deposition testimony (where he admits that he and Defendant Downing never discussed Allen) and then argue that a dispute of fact remains as to whether Plaintiff consented to being celled with Allen. But changing his story now via affidavit to say that Plaintiff and Downing *did* talk about Allen—when Plaintiff plainly already admitted in his deposition that the two did not—is exactly the sort of thing the sham affidavit rule precludes.

---

[5] In his Response Brief, Plaintiff concedes that he testified in his deposition that he said nothing about Allen to Defendant Downing during their July 17th conversation. Doc. [74] at 9–10.

*Schiernbeck v. Davis*, 143 F.3d 434, 438 (8th Cir. 1998) (finding affidavit "plainly inconsistent" with prior deposition testimony and upholding district court's decision to exclude testimony).

There can be no reasonable dispute that Plaintiff has changed his testimony on this matter to try to avoid summary judgment. Because Plaintiff's affidavit directly contradicts his prior deposition testimony, the Court will "disregard" ¶¶ 32 and 33 of Plaintiff's new affidavit as it pertains to Defendant Downing.

4. ***Whether Defendant Crocker Tried To Stop The Alleged Attack On July 20th***.

On July 20, Allen attacked, beat into unconsciousness, and raped Plaintiff in their cell, and Defendant Crocker witnessed part of the attack. In his deposition, Plaintiff explained that Defendant Crocker stood outside of Plaintiff's cell door while Allen beat and raped Plaintiff and that Defendant Crocker was "pleading" with Allen to get off Plaintiff but did not physically enter the cell. Doc. [73-1] at 157 (157:11–18). When Plaintiff and Defendant Crocker later discussed the incident, Plaintiff "asked her why she didn't help me, why she didn't come in the room and get him off me." *Id.* at 158 (158:1–3). In his affidavit, Plaintiff stated that "[w]hile being attacked by Defendant Allen but before I lost consciousness, I saw that Defendant Crocker was looking into the cell but not doing anything to stop the attack." Doc. [73-2] ¶41.

Viewing this testimony in context, Plaintiff's affidavit is not directly contrary to his deposition. In both accounts, Plaintiff explains that Defendant Crocker stood outside his jail cell while Allen beat and raped Plaintiff. Despite Plaintiff stating in his deposition that Defendant Crocker "pleaded" with Allen to stop attacking Plaintiff, Plaintiff also stated in his deposition that Defendant Crocker failed to help him during the attack, see Doc. [73-1] at 158, due to her failure to physically enter and stop Allen from beating and raping Plaintiff. This sentiment is similarly conveyed in his affidavit. It is for the jury, not the court, to decide whether standing outside of the

cell door "pleading" for Allen to stop did or did not do "anything" to stop the attack.  But such testimony is not inconsistent; thus, the Court will not "disregard" ¶ 41 of Plaintiff's affidavit. *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) ("Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before.").

CONCLUSION

The Court grants the Motion in part and will disregard ¶¶ 32 and 33 of Plaintiff's affidavit as it pertains to Defendant Downing only.   The Court will not disregard the other requested portions of Plaintiff's affidavit.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion To Strike Portions of Plaintiff's Affidavit, Doc. [72], is **denied in part and granted in part**.

**IT IS FURTHER ORDERED** that the Court shall disregard ¶¶ 32 and 33 of Plaintiff's affidavit, Doc. [73-2], as it pertains to Defendant Downing only.

Dated this 29th day of June 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE