UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER S. GILLISPIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:20-cv-1598-MTS |
| | ) |
| TERRY LAWSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Defendants Teri Vandergriff,[1] Daniel Francis, John Hagerty, Ryan Hillis, Amanda Crocker, Alex Downing, Tiffany Owens,[2] Ryan Hanna, and Darren Klemp (collectively, the "FCC Defendants" or "Defendants") filed a Motion for Summary Judgment. Doc. [61]. For the reasons that follow, the Court denies in part and grants in part the Motion.

This case arises out of claims by Plaintiff Christopher Gillispie that Defendants failed to protect him from an attack on July 20, 2020 ("July 20") by his cellmate, Rodney Allen ("Allen").[3] Plaintiff claims that Defendants violated his Eighth Amendment constitutional right and committed common law negligence in failing to protect him from this attack. Plaintiff claims Defendants were aware of the danger Allen posed to Plaintiff because of an incident that occurred two weeks earlier on July 6, 2020 ("July 6"). Despite the July 6 incident, Allen was placed back into the same cell as Plaintiff, and two days later, Allen attacked, beat, and raped Plaintiff.

---

[1] The Court notes that Plaintiff incorrectly named this Defendant Teri as "Terry." Also, since this lawsuit was filed, Defendant Teri Lawson's name has changed to Teri Vandergriff.
[2] The Court notes that since this lawsuit was filed, Defendant Tiffany Lambing's name has changed to Tiffany Owens.
[3] Allen is also named as a co-Defendant in this action; however, he is not a party to this Motion.

1

I.  **BACKGROUND**

The undisputed facts are as follows. At the time relevant to this case, Plaintiff was incarcerated in the custody of the Missouri Department of Corrections ("MDOC") at Farmington Correctional Center ("FCC"). There, Plaintiff and Allen were cellmates from June 26, 2020, to July 6, 2020, and July 17, 2020, to July 20, 2020, in Housing Unit 5 ("HU-5").

On the morning of July 6, 2020, Allen became upset because he believed he had a court date but was not on the list of inmates to be transported from the prison to court. Allen began acting irrationally, pacing back and forth, shouting obscenities, banging his head on the walls, and kicking the cell door. Plaintiff requested that the FCC staff (some Defendants)[4] remove Plaintiff from the cell, but Allen held Plaintiff "hostage," refusing to allow Plaintiff out of the cell. Doc. [63-1] at 18, 49. There is a dispute as to whether Allen specifically threatened Plaintiff. FCC's Chief of Mental Health Services, Lisa Sanderson ("Sanderson"), attempted to calm Allen down, but that escalated the situation. Allen continued acting "aggressively and hostilely," *id.*, such as self-harming, brandishing a razor blade with which he cut himself, and refusing to allow Plaintiff to leave the cell. Doc. [63-13] at 3; Doc. [63-1] at 4, 26, 24. When Allen would not calm down or submit to restraints, after fifteen to thirty minutes, FCC staff resorted to resolving the situation by deploying chemical spray into the cell. Both Allen and Plaintiff were extracted from the cell. Allen was taken to a single-man cell and put on suicide watch, and Plaintiff received medical treatment due to exposure to the chemical spray.

After the situation ended, Plaintiff told Defendant Hillis, an FCC case manager, "'Listen, I'm in fear of my life. I don't want [Allen] back in my cell.'" Doc. [71-1] at 75–76 (75:19–76:4). Sanderson directly told Defendant Hillis to ensure that Plaintiff and Allen not be celled together

---

[4] Defendants Hagerty, Hillis, Crocker, Lambing, Hanna, and Klemp were present for part of the July 6 incident.

again. *Id.* at 76 (76:5–8); Doc. [69-1] ¶ 19. On July 14, 2020, after evaluating Allen's mental state, Sanderson determined that Allen was not a threat to himself and took him off suicide watch. Allen remained in a single-man cell.

On July 15, 2020, Plaintiff wrote a three-page Informal Resolution Request ("IRR") complaining about the events of July 6. Doc. [63-13]. Plaintiff claims the FCC staff failed to protect him "from [his] kidnapper" and increased the danger to Plaintiff by spraying him with chemical spray, which blinded him from his attacker, also leaving him "vulnerable" and "defenseless" while inside the cell with Allen. *Id.* at 2–3. Plaintiff explained that Allen "wielded a dangerous weapon" (i.e.: razor blade) while making "several homicidal threats" as well as displaying self-harming behavior. *Id.* Plaintiff stated Allen held him against his will and refused to allow FCC staff to remove Plaintiff from the cell. *Id.* Plaintiff stated he was "in fear for [his] life" and "cried for help [and] rescue." *Id.* On July 16, 2020, Defendant Hillis received and reviewed the IRR, per MDOC policy, Doc. [63-14] at 9–14, but it is disputed how much of the IRR he read. That day, Defendant Hillis went to verbally discuss the IRR with Plaintiff, per MDOC policy, *Id.* at 12. What was said in the conversation is in dispute.

On July 17, 2020, Defendant Downing, a Corrections Officer II, was the evening sergeant on duty in HU-5. Defendant Downing knew that Allen had been taken off suicide watch, meaning that he could be celled with another inmate. Defendant Downing moved Allen back into Plaintiff's cell. Defendant Downing was not present during the July 6 incident. Sometime after Defendant Downing moved Allen back into Plaintiff's cell but prior to the July 20 attack, Defendant Hagerty, the Functional Unit Manager of HU-5, spoke to Defendant Downing about issues celling Allen and Plaintiff together. Doc. [69-4] at 29 (29:7–21).

3

On July 18, 2020, Plaintiff wrote one or two "kites" (a note sent through the prison's mail system), expressing fear of Allen and placed the kites in an envelope in the window of his cell for FCC staff to receive them.  Doc. [69] ¶ 73; Doc. [69-1] ¶ 37.  That same day, Plaintiff "directly" told Defendant Klemp, a Corrections Officer I, that Allen was again "acting up," and that Plaintiff feared for his life and needed to get out of the cell.  Doc. [69-1] ¶ 36.

On July 20, 2020, Plaintiff got up to use the bathroom and Allen hit him in the back of the head; Plaintiff fell to the floor.  Doc. [63-16] (report from the Prison Rape Elimination Act ("PREA") investigation).  Allen began to choke Plaintiff and beat his head into the toilet.  Plaintiff lost consciousness and when he came to, Allen was still beating him.  Plaintiff again lost consciousness, and when he came to, Allen was pulling Plaintiff's pants down.  Plaintiff attempted to get away, but Allen kicked him and then anally penetrated him.  Allen began kicking Plaintiff again until Plaintiff lost consciousness.  Plaintiff regained consciousness after a nurse used smelling salt to wake him up.  Defendant Crocker, a Corrections Officer II, was the responding officer to the attack.  It is disputed how much of the attack she witnessed.

Based on these facts, Plaintiff sued ten individual defendants asserting four claims for relief.  Only counts I and II are asserted against Defendants.  Doc. [8].  In Count I, Plaintiff asserts a 42 U.S.C. § 1983 claim, alleging Defendants were deliberately indifferent to a serious risk of harm to Plaintiff in violation of the Eighth Amendment.  In Count II, Plaintiff claims Defendants are liable for negligence under Missouri state law.  In the current Motion, Defendants move for summary judgment on both counts.

**II.    LEGAL STANDARD**

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law."

*Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)).  A dispute is not "genuine" unless the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."  *Bedford*, 880 F.3d at 996.  If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court views any genuine factual disputes in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

#### A.  Count I: Eighth Amendment violation via 42 U.S.C. § 1983

In Count I, Plaintiff sued Defendants via 42 U.S.C. § 1983 for violations of the Eighth Amendment due to their alleged deliberate indifference to a serious risk of harm to Plaintiff's safety.  Doc. [8] at 12–16.  At a high level of generality, prison inmates have a clearly established Eighth Amendment right to be protected from violence from other inmates.  *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).  "As such, prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners." *Gillispie v. Lawson*, 4:20-cv-01598-SPM, 2021 WL 1198064, at *4 (E.D. Mo. Mar. 30, 2021)

(citing *Berry v. Sherman*, 365 F.3d 631, 633–34 (8th Cir. 2004)).  However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010).  "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).  For this reason, to prevail on an Eighth Amendment failure-to-protect claim like Plaintiff's, an inmate must make two showings: (1) that his continued incarceration with Allen "posed a substantial risk of serious harm," and (2) that Defendants "knew of and disregarded an excessive risk to" Plaintiff's safety.  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *see also Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (explaining this type of "claim has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk").  The Court notes that Defendants move for summary judgment on the second component of Plaintiff's failure-to-protect claim only.

1. **<u>Whether Allen Threatened Plaintiff Prior to July 20 is Disputed</u>**.

First, Defendants argue that Allen never threatened Plaintiff before the July 20 attack, thus, Defendants could not have known of a prior risk to Plaintiff.  Doc. [62] at 9–13.  In support of their motion, Defendants point to clearly disputed facts.  *See, e.g.*, Doc. [69] at ¶¶ 82, 28–29.  Despite Defendants assertion to the contrary, there *is* a dispute as to whether Allen threatened Plaintiff before the July 20 attack.  *See, e.g.*, Doc. [63-13] ("I was being held hostage, an[d] against my will"; "Allen made several homicidal threats"; "I was in fear for me life"; "I cried for help and rescue"; "blinding me from my kidnapper"; "holding me against my will and wielding dangerous weapons"); Doc. [63-1] at 18 (FCC staffer describing the July 6 incident where Allen acted "aggressively and hostilely" and refused to allow Plaintiff out of the cell); Doc. [69-1] ¶¶ 7–17.

6

Defendants ask this Court to do what it cannot do on a motion for summary judgment—find that Defendants' recitation of the facts is true, and Plaintiff's is false. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (prohibiting a court from weighing evidence or making credibility determinations on summary judgment). The Court finds there is a genuine dispute of material fact on this point. *Liberty Lobby*, 477 U.S. at 248 (noting that "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

### 2. Whether Defendants Had Knowledge That Allen Posed A Risk of Serious Harm to Plaintiff is Disputed.

Second, Defendants argue they were not deliberately indifferent because they had no knowledge that Allen posed a risk to Plaintiff. Doc. [62] at 13–18. "A prison official 'violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.'" *Vandevender*, 970 F.3d at 975 (quoting *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)). The Court notes that Defendants do not argue that the incarceration of Plaintiff and Allen together did not pose a "substantial risk of serious harm" to Plaintiff. Rather, Defendants argue they did not have knowledge that Allen posed a risk of harm to Plaintiff; thus, they necessarily could not have been deliberately indifferent to it.[5] *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (explaining deliberate indifference requires

---

[5] To prove the second component of a failure-to-protect claim, a plaintiff must show both that defendants knew of the harm <u>and</u> then acted with deliberate indifference to plaintiff's safety. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (explaining deliberate indifference first requires an inquiry into whether the defendant knew of a risk and then, whether there is evidence the defendant "recklessly disregarded that risk"); *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) ("After showing knowledge, Plaintiffs then must demonstrate the actor deliberately disregarded that risk."). The Court notes Defendants only argue the knowledge aspect of deliberate indifference and do not argue that the Defendants did not "act" with what would amount to deliberate indifference. *Pagels*, 335 F.3d at 740 ("[T]o act with deliberate indifference, [defendants] must have recklessly disregarded a known, excessive risk of serious harm to [plaintiff's] safety").

a plaintiff to first demonstrate that defendants knew of a risk to the victim (citing *Jackson*, 140 F.3d at 1152)). The Court discusses each Defendant in turn.

**Defendant Hagerty** witnessed part of the July 6 incident, but there is a dispute as to whether Defendant Hagerty witnessed Allen specifically threatening Plaintiff. During the incident, Plaintiff directly told Defendant Hagerty that Plaintiff feared for his life around Allen while in the cell on July 6. Doc. [69-1] ¶ 12. After July 6, Sanderson had *several* conversations with Defendant Hagerty about *not* celling Plaintiff and Allen together. Doc. [69-2] at 27 (26:11–16); 26–27 (25:22–26:4); 24 (23:17–23). As one example, Sanderson directly told Defendant Hagerty to ensure that Plaintiff and Allen not be celled together again because Allen might hurt Plaintiff in an attempt to delay a transfer to a maximum-security prison. Doc. [63-12] at 26 (66:10–18); Doc. [69-2] at 26 (25:2–4); 24–25 (23:17–24:2). Also, after Defendant Downing had already placed Allen back into Plaintiff's cell, but sometime before the July 20 attack, Defendant Hagerty learned that Defendant Downing had celled Allen and Plaintiff together and spoke with Defendant Downing about that situation. Doc. [69-4] at 29 (29:7–21). The Court finds that on this record a jury could find that Defendant Hagerty had knowledge that Allen posed a risk of serious harm to Plaintiff.

**Defendant Klemp** witnessed part of the July 6 incident, but there is a dispute as to whether Defendant Klemp witnessed Allen threatening Plaintiff. After July 6, Sanderson had *several* conversations with Klemp about not celling Plaintiff and Allen together. Doc. [69-2] at 26–27 (25:22–26:4); 28 (27:22–24). On July 18, 2020—after Allen was back in Plaintiff's cell— Plaintiff directly told Defendant Klemp that Allen was again "acting up," and that Plaintiff feared for his life and needed to get out of the cell. Doc. [69-1] ¶ 36. The Court finds that on this record a jury could find Defendant Klemp had knowledge that Allen posed a risk of serious harm to Plaintiff.

8

**Defendant Hillis** witnessed part of the July 6 incident, but there is a dispute as to whether Defendant Hillis witnessed Allen threatening Plaintiff. After the incident had resolved, Plaintiff told Defendant Hillis on July 6 "'Listen, I'm in fear of my life. I don't want [Allen] back in my cell.'" Doc. [71-1] at 75–76 (75:19–76:4). That same day, Lisa Sanderson directly told Defendants Hillis to ensure that Plaintiff and Allen not be celled together again. *Id.* at 76 (76:5–8); Doc. [69-1] at ¶ 19. Then, on July 16, 2020, Plaintiff had a verbal conversation with Defendant Hillis about the IRR he had submitted regarding the July 6 incident. Although there is a dispute regarding how much of the IRR Defendant Hillis read and the extent of the conversation between Defendant Hillis and Plaintiff regarding the IRR, see Doc. [69] ¶¶ 48, 49, 51, there is evidence in the record from which a jury could find Defendant Hillis knew the contents of the IRR, including that Allen had threatened Plaintiff, held Plaintiff against his will, that Plaintiff feared for his life, that Plaintiff screamed and cried out for help, and that he wanted away from Allen and to never again be celled with him. Doc. [63-13] (Plaintiff's IRR: "I was being held hostage, an[d] against my will"; "Allen made several homicidal threats"; "I was in fear for my life"; "I cried for help and rescue"; "blinding me from my kidnapper"; "holding me against my will and wielding dangerous weapons"); Doc. [69-1] ¶¶ 27, 32–33; Doc. [71-1] at 96–97 (96:20–97:20) (Plaintiff's deposition testimony regarding his conversation with Defendant Hillis). The Court finds that on this record a jury could find that Defendant Hillis had knowledge that Allen posed a risk of serious harm to Plaintiff.

**Defendant Downing** was neither present nor on duty during the July 6 incident, and there is a dispute as to whether Plaintiff told Defendant Downing he was okay with him and Allen being re-celled together, which, if uncontroverted, could have entitled Defendant Downing to summary judgment on this point. *See, e.g.*, *Walls v. Tadman*, 762 F.3d 778, 783 (8th Cir. 2014) (finding

9

prison officials not deliberately indifferent to risk where they asked him in advance if he wanted protective custody from attacker and plaintiff declined and both prison inmates told officials that they expected no further problems); *Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002) (holding that an inmate's own statements that a prisoner posed no risk to him would bar his failure-to-protect claim). While the record does not support an inference that Defendant Downing had reason to know Allen posed a risk to Plaintiff *before* he placed them together on July 17, 2020, the record shows Defendant Hagerty later spoke to Defendant Downing about issues celling Allen and Plaintiff together. Doc. [69-4] at 29 (29:7–21). As such, the Court finds there is a dispute because the record supports a reasonable inference that Defendant Downing "had been exposed to information concerning the risk and thus 'must have known' about it." *Letterman*, 789 F.3d at 862 (quoting *Farmer*, 511 U.S. at 842).

**Defendant Crocker** witnessed part of the July 6 incident, and although there is a dispute as to whether Defendant Crocker witnessed Allen threatening Plaintiff during that time, the Court does not find on this record that the July 6 incident *alone* would impute actual knowledge on Defendant Crocker of a substantial risk of serious harm to Plaintiff. *Pagels*, 335 F.3d at 740–41 (noting "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm" (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)); *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016) (per curiam) (explaining an inmate's complaints of "general fear for his safety" is not enough to establish he was at risk). However, Defendant Crocker was on duty during and responded to the July 20 attack where Allen beat and raped Plaintiff. As the Court previously explained, "[i]t is for the jury, not the court, to decide whether standing outside of the cell door 'pleading' for Allen to stop did or did not do 'anything' to stop the attack." *Gillispie v. Lawson*, 4:20-cv-1598-MTS, 2022 WL 2340550, at *4

(E.D. Mo. June 29, 2022). In other words, there is a dispute as to whether Defendant Crocker acted with deliberate indifference during the July 20 attack where Allen brutally attacked Plaintiff and Plaintiff suffered a "serious depravation of his rights."[6] *Gillispie*, 2021 WL 1198064, at *4; *see also Curry*, 226 F.3d at 977 ("clearly established right" to be protected from violence by other inmates).

### 3. Material Facts Relevant To Qualified Immunity Are Disputed.

Finally, Defendants argue they are entitled to qualified immunity because Plaintiff cannot show a violation of a clearly established right. Doc. [62] at 18–19. Qualified immunity shields state officials from civil liability "unless their conduct violates a clearly established right of which" was established "at the time of the depravation." *Patterson*, 902 F.3d at 851. Defendants put forth two arguments on this point; both of which the Court finds unavailing.

First, Defendants argue that there is no clearly established right to protection from "a surprise attack by another inmate." While this may be true, see *Tucker v. Everett*, 276 F.3d 999, 1001 (8th Cir. 2002), the Court does not find that the record supports that Allen's attack was necessarily a "surprise." But in any regards, this issue remains disputed. Second, Defendants argue that Defendants did not violate a clearly established constitutional right because none of them knew there was a risk to Plaintiff's safety. *Jackson*, 140 F.3d at 1152 (finding defendants entitled to qualified immunity where there was "insufficient evidence [defendants] knew of an excessive risk to [plaintiff's] safety" in the prison). As discussed directly above, the Court finds whether Defendants knew that Allen posed a risk to Plaintiff is disputed. Because there are

---

[6] The Court notes that Defendants did not move for summary judgment for Defendant Crocker's actions during the actual attack on July 20. And, despite allegations in the Complaint and Plaintiff bringing up this point in his Response Brief, Defendants failed to address the issue of Defendant Crocker's liability stemming from her response to the July 20 attack.

11

disputes over material facts relevant to qualified immunity, the Court must deny the Defendants' motion on this basis. *See Coker v. Arkansas State Police*, 734 F.3d 838, 842 (8th Cir. 2013).

### B. Count II: Negligence under Missouri Law

In Count II, Plaintiff sued Defendants for negligence under Missouri law. Doc. [8] at 16–17. To demonstrate negligence, Plaintiff must establish that Defendants had a duty to protect Plaintiff, that they failed to perform that duty, and that Plaintiff's injury was proximately caused by this failure. *See Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc 2008). Plaintiff alleged that Defendants had a duty to ensure his safety, and that Defendants breached their duty by failing or refusing to take action that would have prevented inmate Allen from being placed in the same cell as Plaintiff.

1. **Whether Defendants Are Entitled to Official Immunity is Partially Disputed**.

Defendants argue they are entitled to official immunity because Defendants performed discretionary functions.[7] Doc. [62] at 24–25. Official immunity "protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019). An act is discretionary if there is "variation in when and how a particular task can be done." *Id.* at 191.

In support of their motion for summary judgment on this basis, Defendants point to the MDOC policy on protective custody. MDOC policy requires prison staff to put an inmate in protective custody in two scenarios: (1) if the inmate asks for protective custody, or (2) if the prison official believes there is a serious risk to the inmate's safety. Doc. [63-19]. As such, if Plaintiff "asked" a Defendant for protective custody, the Defendant's action would not be discretionary,

---

[7] Defendants bear the burden of proving that they are entitled to official immunity. *See Kemp v. McReynolds*, 621 S.W.3d 644, 652 (Mo. App. 2021).

12

but mandatory, and official immunity would not apply.  There is a dispute of fact as to whether Plaintiff asked Defendants Klemp and Hillis for protective custody.  *See, e.g.*, Doc. [69-1] ¶ 36 (Plaintiff's affidavit that he "directly told" Defendant Klemp on July 18, 2020, that Plaintiff "feared for [his] life" and needed to get out of the cell with Allen); *Id.* ¶¶ 27, 32–33 (Plaintiff's affidavit stating he told Defendant Hillis, among other things, that Plaintiff "feared for [his] life and never wanted to share a cell with Allen again"); Doc. [71-1] at 75–76 (75:19–76:4) (Plaintiff's deposition testimony on telling Defendant Hillis "'I don't want [Allen] back in my cell.' I declared him as an enemy at that moment right there. I said, 'Listen, I'm in fear of my life. I don't want him back in my cell'"); *Id.* at 96–97 (96:20–97:20) (Plaintiff's deposition testimony of his July 16, 2020, conversation with Defendant Hillis regarding his IRR); Doc. [63-13] (Plaintiff's IRR); Doc. [69] ¶¶ 67–69 (Plaintiff's response to Defendants' Statement of Material Facts that disputes whether Plaintiff ever asked Defendants for protective custody from Allen, whether Plaintiff expressed fear or apprehension of Allen prior to July 17, 2020, and whether Plaintiff requested to move Allen out of their shared cell).  However, the Court does not find any communications in the record between Plaintiff and Defendants Downing, Hagerty, or Crocker are ones of which a jury could reasonably conclude was a request for protective custody.  Nor can Plaintiff point to the other provision of the MDOC policy.  The second part of the MDOC policy—whether Defendants "believed" Plaintiff was subjected to a serious risk of harm—is, by definition, discretionary.  As such, official immunity applies to Defendants Downing, Hagerty, and Crocker.

2. **<u>Whether Defendants Knew Plaintiff Was In Danger is Disputed</u>**.

Defendants argue they cannot be negligent in failing to prevent the July 20 attack as a matter of law because none of them knew nor had reason to know that Allen posed a threat to Plaintiff prior to July 20; thus, no duty to protect him arose.  Doc. [62] at 20–21.  To support their

13

motion for summary judgment on Count II, Defendants rely on the "same evidence that shows the [] Defendants lacked the knowledge to hold them liable under §1983 likewise shows that no duty to protect Plaintiff arose to hold them liable for common law negligence." Doc. [71] at 13. In the § 1983 context of Count I, the Court already found such matter disputed; thus, the Court similarly denies summary judgment on this point.

> 3. **Whether Defendant Hillis's Breach was the Actual or Proximate Cause of Plaintiff's Injuries Is Disputed**.

Finally, Defendants argue that even if Defendant Hillis, specifically, breached a duty to review Plaintiff's entire IRR, that breach was neither the actual nor proximate cause of Plaintiff's injuries. Doc. [62] at 22–24. According to Defendants, Plaintiff's coughing was an "intervening cause" that broke the chain of causation necessary for a negligence claim. *See Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 18 (Mo. Ct. App. 2005) ("Actionable negligence requires a casual connection between the conduct of the defendant and the resulting injury to the plaintiff."). Specifically, Defendants argue that Allen's July 20 attack was precipitated by Plaintiff's spontaneous coughing fit that morning—during the height of the COVID-19 pandemic—and not by any pre-existing hostility toward Plaintiff. The record does not support this argument, and the Court has already rejected Defendants' "surprise attack" argument.

To the contrary, a reasonable juror *could* find on this record that Defendant Hillis's failure to act "set into motion the chain of circumstances leading to the plaintiff's injury." *Tyson v. Chicago Title Ins. Co.*, 348 S.W.3d 833, 837 (Mo. Ct. App. 2011) (explaining proximate cause). As Defendants themselves state in their Brief, had Plaintiff "told Defendant Hillis in their July 16th conversation that Allen had threatened him," then Plaintiff "and Allen would not have been celled together, and the alleged attack would not have occurred." Doc. [62] at 23–24. But, as already noted, there is a dispute as to what Plaintiff told Defendant Hillis during their verbal

14

conversation on July 16, 2020, including that Allen had threatened Plaintiff, held Plaintiff against his will, that Plaintiff feared for his life, that Plaintiff screamed and cried out for help, and that he wanted away from Allen and to never again be celled with him. *See, e.g.*, Doc. [71-1] at 96–97 (96:20–97:20); Doc. [69-1] ¶¶ 27, 32–33. Further, *prior* to July 16, 2020, Plaintiff told Defendant Hillis on July 6, 2020, after Plaintiff was extracted from the cell: "'I don't want [Allen] back in my cell.' I declared him as an enemy at that moment right there. I said, 'Listen, I'm in fear of my life. I don't want him back in my cell.'" Doc. [71-1] at 75–76 (75:19–76:4); *see also id.* at 76 (76:23–25). For these reasons, the Court does not find that Defendant Hillis is entitled to summary judgment for lack of causation.

## Conclusion

The Court grants summary judgment on all counts in favor of Defendants Lawson, Francis, Lambing, and Hanna, per Plaintiff's direction. *See* Doc. [70] at 1. The Court denies summary judgment on Count I for the remaining Defendants: Defendants Crocker, Downing, Hagerty, Hillis, and Klemp. The Court grants summary judgment on Count II in favor of Defendants Downing, Hagerty, and Crocker because they are entitled to official immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [61], is **DENIED in part** and **GRANTED in part**.

**IT IS FURTHER ORDERED** that Defendants Downing, Hagerty, and Crocker are entitled to partial summary judgment on Count II.

**IT IS FINALLY ORDERED** that the Court shall enter judgement in favor of Defendants Lawson, Francis, Lambing, and Hanna on all counts.

Dated this 6th day of July, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE